JAMES P. DORAN, APPELLANT, v. DOROTHY S. ROSS, ADMINISTRATRIX OF THE ESTATE OF RUBIN SPIVAK, DECEASED, RESPONDENT.—221 S. W. 2d 756.

Kansas City Court of Appeals. Opinion delivered June 13, 1949.

824

*Walter W. Calvin* for appellant.

*W. H. Hoffstott, Tom Parrish* and *Morrison, Nugent, Berger, Hecker & Buck* for respondent.

SPERRY, C.—James P. Doran, plaintiff, sued Rubin Spivak, defendant, for damages alleged to have been sustained as a result of an

assault and battery committed by one Stewart, manager of a hotel operated by defendant, while plaintiff was a guest in said hotel. The jury returned a verdict for plaintiff for $2000 actual and $1000 punitive damages, the full amount sued for. The court granted a new trial on defendant's motion and plaintiff appeals. Mr. Spivak has since died and, on this appeal, his administratrix is the respondent.

One of the grounds stated by defendant in his motion for new trial is that a deputy sheriff, instead of the judge who was authorized to do so, excused from service a large number of jurors who constituted a part of the regular panel selected for service at the session of court at which this case was tried, in violation of the statutes regulating the empanelling of jurors; that defendant had no knowledge of such procedure and statutory violation until after the trial of this cause had been completed; and that, therefore, defendant had no opportunity, previous to the filing of his motion for new trial, to object to, or to challenge, the panel. The court granted a new trial on this ground.

Section 757, Amended Laws, 1947, Vol. 1, page 342, provides as follows:

"Where the circuit court is composed of more than one division except as hereinafter provided, one general panel of jurors shall be drawn for all civil or criminal divisions, the number of names to be drawn for such general panel to be determined by the judge designated by a majority of said judges of said court. Said panel shall be drawn and summoned as provided in sections 758 and 761 of this act, and all jurors so summoned shall appear before said judge of said circuit court, which said judge shall hear and determine all excuses of said jurors. *No clerk, deputy, lawyer or other officer of court may in any manner assist or aid any juror so summoned in presenting any excuses that said juror may have to avoid service.*" (Emphasis ours).

The facts with respect to excusing jurors from service, in this case, are as follows: The circuit judge, who had been properly designated as the one before whom all jurors summoned for service should appear and present their excuses and have same determined by him, was busy with other matters on the morning that the members of the panel reported. He passed the "bull pen," where said jurors were awaiting further instructions, and noticed that there was an unusually large number present, probably 225 or 250, far more than probably would be needed. He instructed the deputy sheriff, who attends his court, to call the roll of jurors and to "let everybody off that wanted off, that did not want to serve on the jury, over the number of approximately 155." The evidence is to the effect that the deputy, so instructed, proceeded to carry out the judge's instructions in this respect, and that he excused every one on the panel who did not want to serve. This action was taken entirely outside of the presence of

the judge who was, at the time, in his chambers. After a large number of jurors were so excused from the panel the number left for service was about 150 or 155.

Defendant does not suggest that any one participating in, or responsible in any manner for, the proceedings herein mentioned, acted with an improper or wrong motive. Defendant simply contends that, since the provisions of the statute admittedly were not followed, the panel is an unlawful panel; and that the members thereof, before whom this case was tried were, in effect, nothing more than volunteers, lacking any legal status or authority.

There can be no question but that the procedure followed, with reference to excusing members of the jury panel, was not in conformity with the provisions of the statute. Plaintiff contends, however, that a challenge to the array, based on illegality in the selection of the jury panel, must be made in writing prior to trial and verdict. The above is the general rule, and has been so declared many times. State v. Darrow, 104 S. W. 2d, 249, 1. c. 251; State v. Garrett, 226 S. W. 4, 1. c. 6, 285 Mo. 279, 1. c. 287; State v. Logan, 126 S. W. 2d, 256, 1. c. 258; Massman v. Kansas City Public Service Company, 119 S. W. 2d, 883, 1. c. 887.

However, as is true of most rules known to the law, the above rule has its exceptions. Massman v. Kansas City Public Service Company, supra, 1. c. 838. Where no motion to quash the panel is filed, and the error is first complained of by motion for new trial, if it is stated therein, and made to appear as a fact, that the aggrieved party had no knowledge, before trial, of the irregularity complained of, and could not be held to have had such knowledge, an objection to the manner in which the panel is chosen is timely made if first made in the motion for a new trial. Massman v. Kansas City Public Service Company, supra; State v. Rouner, 64 S. W. 2d, 916, 333 Mo. 1236, 1. c. 1249; State v. Garrett, supra.

In State v. Rouner, supra, it was said that in virtually all of the cases where it was held that objection to illegality in selection of the jury panel comes too late when made for the first time in the motion for new trial, "the record showed that the defendant had knowledge of the grounds of objection before the verdict was returned or that he or his counsel had means of knowledge in the records of the trial court and of the particular cause." In the instant case it is alleged in the motion that defendant did not learn of the illegality until after the trial was completed. The irregularity complained of occurred on Monday morning, April 26, 1948 and this case was tried on Tuesday and Wednesday, April 27 and 28, 1948. In view of the large number of divisions of court in Jackson County, the fact that many of such divisions are frequently in session simultaneously, it is not at all surprising that defendant failed to learn of the irregularity until more than three days after same occurred. Under the circum-

stances here shown we cannot say that he will be held to have known thereof prior to trial and verdict. The complaint was timely made in defendant's motion for new trial.

Plaintiff, while not conceding the point, makes no contention that the irregularity shown to have been committed with reference to selection of the panel was not such as would justify the trial court in sustaining a motion for new trial on that ground. We think such action was fully justified. State v. Rouner, supra.

The Legislature, at its 1947 session, amended the laws prescribing the method and manner of selecting jury panels in Jackson County. A significant addition or amendment thereto is the italicised portion of the statute quoted, supra. The lawmaking body thereby made clear its intention that no officer of the court should use his influence, in the slightest degree, in procuring the release of any member of the panel from jury service. That provision is not merely directory; it is mandatory. If we should hold otherwise, such holding would be in the teeth of the statute and of the positively expressed legislative intent. It is the duty of this court to give effect to statutes enacted by the Legislature, not to nullify them by judicial misinterpretation. In this case a deputy was permitted to, and did, perform a function which was delegated to the judge exclusively and, in so doing, himself violated the statute.

By the above statutory provision the Legislature sought, as the courts ever seek, to preserve inviolate the right of every citizen to a trial before an impartial and fairly chosen jury of his fellowmen. The temple of American justice, without which there can be no freedom as we know freedom, has the jury as one of its foundation stones. If our judicial system should fail the entire American way of life would be jeopardized. Every measure which tends to promote a fair selection of the jury panel should be zealously enforced, for if the source of the stream is pure there is less likelihood that the stream of justice will be contaminated.

Defendant contends that no submissible case was made. Since, in effect, no legal trial was had, we must affirm the judgment of the trial court awarding defendant a new trial. Therefore it would seem inappropriate to discuss the evidence at this time.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. *Dew, P. J., Cave, J.,* concur; *Vandeventer, J.,* (sitting by order of Supreme Court) concurs.